# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | CASE NO. 5:16-cv-979 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| THE COLLEGE OF WOOSTER, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

There are several motions before the Court. First, plaintiff John Doe ("plaintiff" or "Doe") has moved for leave to proceed anonymously against defendant The College of Wooster ("Wooster") and defendant Jane Roe ("Roe") (Doc. Nos. 2 and 12, respectively). These motions are unopposed. Second, plaintiff has moved for expedited discovery (Doc. No. 3). Wooster opposes the motion (Doc. No. 9), and plaintiff has replied (Doc. No. 11). Third, Wooster moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of the claims raised in the first amended complaint ("FAC") against it (Doc. No. 15 ["MTD"]). Plaintiff has filed an opposition to the motion to dismiss (Doc. No. 16 ["MTD Opp'n"]), and Wooster has filed a reply (Doc. No. 17 ["MTD Reply"]). Finally, plaintiff seeks leave to file a second amended complaint ("SAC") (Doc. No. 21 ["Mot. Amend"]). Wooster opposes this motion (Doc. No. 23 ["Mot. Amend Opp'n"]), and plaintiff has replied (Doc. No. 24 ["Mot. Amend Reply"]). For all of the foregoing reasons, Wooster's motion to dismiss is granted, plaintiff's motion to amend is denied, plaintiff's motion to proceed anonymously against Jane Roe is granted, plaintiff's motions to proceed anonymously against Wooster and for expedited discovery are

denied as moot.

I. **BACKGROUND**

In this state law action, here on diversity jurisdiction, plaintiff challenges his expulsion from Wooster, claiming that Wooster violated his contractual rights when it improperly determined that plaintiff had sexually assaulted a female student, defendant Roe, in violation of Wooster's Equal Opportunity, Harrassment and Non-Discrimination Policy (the "Policy"). He raises state law claims against Wooster for breach of contract, promissory estoppel, negligence, intentional infliction of emotional distress, and defamation.[1] He seeks damages, costs, attorney's fees, and an injunction restoring him as a student in good standing at Wooster and prohibiting further disciplinary proceedings against him.

The present litigation is among the multitude of cases that have been filed in the wake of the 2011 "Dear Colleague Letter," issued by the U.S. Department of Education's Office for Civil Rights ("OCR"), which instructs universities to "promptly investigate" any allegation of sexual harassment or assault when it "knows, or reasonably should know, about possible harassment" of a student, regardless of whether the harassed student actually makes a complaint. Russlynn Ali, Dear Colleague Letter, U.S. Dept. of Educ. at 4 (Apr. 4, 2011), available at: http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf. The Dear Colleague Letter requires academic institutions to employ certain procedures in disciplinary actions involving sexual misconduct by students and faculty, including the use of a "preponderance of

---

[1] When plaintiff filed his FAC he added a second defendant, Jane Roe. He raises separate claims for intentional infliction of emotional distress and defamation against Roe, who has yet to file an answer or otherwise respond to the FAC. The claims against Roe are not affected by Wooster's Rule 12(b)(6) motion.

the evidence standard," rather than more demanding standards of proof used by academic institutions in the past. *Id*. at 11. (*See* FAC ¶ 11.)

Much of the FAC is devoted to the impact the Dear Colleague Letter has had on university investigations and prosecutions of students. It is plaintiff's position, and it is one shared by male litigants around the Country, that this government initiative has resulted in colleges and universities being pressured into aggressively pursuing the prosecution of sexual assaults on campuses, and treating "all those accused of sexual misconduct with a presumption of guilt." (FAC ¶¶ 12, 13(a).) *See, e.g., Doe v. Brown Univ*., 166 F. Supp. 3d 177, 181 (D. R.I. 2016) ("Many of the recent cases, including this one, allege that the pressure on universities from the OCR has caused a backlash against male students accused of sexual assault."). According to plaintiff, the concern that the Department of Education might withhold federal funding if it finds a university's enforcement wanting, serves as a powerful incentive for colleges to err on the side of violating an accused student's rights.

Purportedly in response to the Dear Colleague Letter, Wooster adopted a policy entitled "Equal Opportunity, Harassment and Non-Discrimination." (*See* FAC ¶ 14; Doc. No. 6-1 [the Policy].) The Policy provides that "The College of Wooster considers Non-Consensual Sexual Intercourse violations to be the most serious and, therefore, typically imposes the most severe sanctions, including suspension or expulsion for students and termination for employees." (FAC ¶ 14(b) (quoting the Policy.) It defines the various acts of sexual misconduct that violate the Policy, and provides for alleged violations to be adjudicated pursuant to the terms of Wooster's Official Student Handbook, known as "The Scot's Key." (*Id*. ¶ 16; *see* Doc. No. 6-2 ["Student Handbook"].)

It is against this backdrop that plaintiff claims he was wrongfully accused and disciplined for violating the Policy. The Court considers the facts offered in support of these claims in a light most favorable to plaintiff. According to the FAC, plaintiff and Roe were both students at Wooster. (FAC ¶¶ 3, 5.) The two were "good friends" who had engaged in sexual contact in the past, but had never had sexual intercourse. (*Id*. ¶ 21.) On the evening of November 1, 2014[2], Roe was drinking with a number of her friends, first in a dorm and later at a couple of parties, including one hosted by a fraternity (*Id*. ¶ 23.) Roe saw plaintiff at the fraternity party, but the two did not speak. (*Id*. ¶ 25.) Later that evening, plaintiff called Roe requesting her assistance in getting into the dorm because he had misplaced his access card. (*Id*. ¶ 26.) After she admitted plaintiff into the dorm, Roe invited him into her room. The two removed their clothing and started kissing on Roe's bed. (*Id*. ¶ 28.) Plaintiff twice asked Roe if she wanted to have sex. Although she said "no," she continued to kiss Doe. (*Id*.) Eventually, Doe got out of bed and started to leave. Roe wanted plaintiff to "stay and cuddle with her." (*Id*. ¶ 29.) The two argued, in part because plaintiff did not want "that type of relationship." (*Id*.) Plaintiff left the room without having intercourse with Roe. In fact, plaintiff maintains that he has never had intercourse with Roe. (*Id*. ¶ 30.)

"On May 12, 2015—more than six months after the" incident—Roe filed a Report of Discriminatory Harassment/Sexual Misconduct with Wooster. (*Id*. ¶ 33, internal quotation marks and citation omitted.) In her report, she did not state that plaintiff had sexual intercourse with her. Instead, she wrote, "As [Doe] tried to remove his clothes, along with mine, I was able to

---

[2] Plaintiff alleges that Roe's sexual assault complaint erroneously identifies October 31, 2014, as the date of the incident. (FAC ¶ 33(a).)

mule kick him off of me. He then yelled in my face, shook me, and left the room." (*Id.* ¶ 33(c), internal quotation marks and citation omitted.) Angela Johnston is the Secretary of Wooster and serves as the Title IX coordinator for the institution. (*Id.* ¶¶ 15(b), 34.) After receiving Roe's complaint, she emailed Roe and asked for a meeting. Roe responded that she was studying abroad but would "touch base" with Johnston when she returned on June 3, 2015. (*Id.* ¶ 35.) Johnston did not meet with Roe, or otherwise investigate Roe's complaint, at any point during the summer of 2015. (*Id.* ¶¶ 36, 38.)

On August 5, 2015, Johnston emailed Roe and, again, requested a meeting. Roe stated that she would consider meeting with Johnston when she returned to campus. (*Id.* ¶ 39.) Roe advised Johnston that her first year at Wooster was "horrible" and that she had not done well. (*Id.* ¶ 39(a).) Johnston responded by assuring her, "I'm sorry you didn't have a good first year; I'll do what I can to help you get off to a good start this year." (*Id.* ¶ 39(b).) Notwithstanding this exchange, Roe did not meet with Johnston, and Johnston took no steps between August 5, 2015 and November 2015 to investigate the complaint. (*Id.* ¶ 40.)

Roe did not actually meet with Johnston until December 2, 2015. (*Id.* ¶ 43; *see id.* ¶¶ 41-42.) It was during this meeting that Roe "changed her story and told Johnston that she had been raped by John Doe (i.e. that John Doe had compelled her to have intercourse by force)." (*Id.* ¶ 43.) Plaintiff insists that these allegations were false. (*Id.* ¶ 44.) Four days after this meeting (December 6, 2015), Roe emailed Johnston and indicated that she did not want to further pursue her complaint. (*Id.* ¶ 45.) Johnston responded with a request to meet again. In doing so, Johnston advised Roe that her new allegation of rape "heightens the concern" about Doe. (*Id.* ¶ 45(c) and (i).) She advised Roe that she saw the allegations as an opportunity to "take actions to remove

5

the 'perception out there in the study body' about the College's handling of sexual assault allegations." (*Id.* ¶ 45(ii).) The two met, again, on December 15, 2015, at which time Johnston "encouraged and convinced" Roe to go forward with her complaint. (*Id.* ¶ 46.)

On December 18, 2015, Johnston "informed John Doe by email, 'a female student has filed a complaint of sexual misconduct against you.'" (*Id.* ¶ 48.) He was not told the identity of the complainant at that time. Two days later (December 20, 2015), Johnston informed Doe that Wooster had received a complaint that he had violated the Policy. (*Id.* ¶ 50.) Wooster started its investigation into the complaint on December 22, 2015. (*Id.* ¶ 51.) The private attorney retained by Wooster to investigate the matter, Katie Clifford, interviewed plaintiff on January 19, 2016. (*Id.* ¶¶ 52-54.) Clifford's investigation was completed by February 10, 2016. (*Id.* ¶ 53.)

Plaintiff received a copy of the investigative report on February 19, 2016, at which time he learned the "exact nature of the charges against him[.]" (*Id.* ¶ 58.) On March 2, 2016, Wooster conducted a hearing "ostensibly to determine if John Doe had violated the Equal Opportunity Policy." (*Id.*) According to plaintiff, he was prohibited from presenting relevant evidence and witnesses, and was not permitted to be represented by counsel. He alleges that, from the outset, Wooster presumed that he was guilty "in order to look good for the Department of Education." (*Id.* ¶¶ 59-60.) At the conclusion of the hearing, John Doe was found "guilty" of violating the Policy. (*Id.* ¶ 59.) Plaintiff was ultimately expelled from Wooster. The FAC is silent as to whether plaintiff administratively appealed the finding or sanction.

## I. PLAINTIFF'S MOTION TO AMEND

### A. Standard of Review

The Court begins with plaintiff's motion to amend. Rule 15(a)(2) of the Federal Rules of

Civil Procedure governs plaintiff's motion to amend. It provides, in relevant part, that the Court should "freely give leave" to amend pleadings "when justice so requires." "Nevertheless, denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility or amendment, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Courts should freely give leave to amend in the absence of these factors. *Foman*, 371 U.S. at 182.

### B.  Request to Add a Title IX Claim

Plaintiff seeks leave to amend to add a claim under Title IX of the Education Amendments of 1972. 20 U.S.C. § 1681 *et seq*. Section 1681(a) provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance[.]" 20 U.S.C. § 1681(a). According to plaintiff, "[t]he new claim under Title IX is premised on the allegation that the College's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the College from accusations that they had failed to protect female students from sexual assault." (Mot. Amend at 693[3], citing SAC.)

While school disciplinary boards must be impartial, "they are entitled to a presumption of honesty and impartiality absent a showing of actual bias." *Doe v. Univ. of Cinci.*, 173 F. Supp. 3d

---

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

586, 601 (S.D. Ohio 2016) (citing, among authority, *Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 256 (6th Cir. 2005)); *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) (cautioning that "courts should refrain from second-guessing the disciplinary decisions made by school administrators"). To set forth a claim of gender discrimination under Title IX, "[a] plaintiff must allege facts sufficient to overcome this presumption, such as statements by board members or university officials indicating bias or a pattern of decision-making suggesting that gender was an influence." *Doe v. Univ. of Cinci.*, 173 F. Supp. 3d at 601 (citation omitted).

"The analysis of a Title IX violation is similar in many respects to Title VII, with the exception that, unlike a Title VII claim, a Title IX claim may not be premised on the 'disparate impact' a policy has with respect to a protected group." *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 184 (D.R.I 2016) (citation omitted). Under either a "deliberate indifference" or "archaic assumptions" standard, "a plaintiff must demonstrate that the educational institution's challenged misconduct was motivated by sex-based discrimination." *Doe v. Case W. Reserve Univ.*, No. 1:14CV2044, 2015 WL 5522001, at *4 (N.D. Ohio Sept. 16, 2016) (citing *Mallory v. Ohio Univ.*, 76 F. App'x 634, 639 (6th Cir. 2003)).

Plaintiff's motion to amend is premised on the decision of *Doe v. Columbia Univ.*, 831 F. 3d 46 (2d Cir. 2016). (Mot. Amend at 689.) There, a male student alleged that the university acted with gender bias in investigating and ultimately suspending him for an alleged sexual assault on a female student. He claimed that university decision-makers, under fire from students and the public media for allegedly "not taking women's sexual assault complaints seriously, took a pro-female, sex-biased stance on [the complainant's] allegations, leading them to decide

against [the plaintiff], incorrectly and contrary to the weight of the evidence." *Doe v. Columbia Univ.*, 831 F.3d at 53. In support of his Title IX claim, the plaintiff cited criticism by Columbia students that "the University did not take seriously the complaints of female students about sexual assaults by male students." *Id*. at 50. He also cited a media article accusing the university of "drop[ping the] ball" as to sexual assault complaints by female students against male athletes. *Id*. The court found that the plaintiff had properly supported the inference of gender bias by pointing to the student and media criticism. *Id*. at 57.

Plaintiff alleges that his proposed Title IX claim "falls directly within the *Columbia University* decision" because he has alleged in the SAC that, "[d]uring the period preceding the disciplinary hearing, there was substantial criticism of the College, both in the student body and in the public media, accusing the College of not taking seriously complaints of female students alleging sexual assault by male students." (Mot. Amend at 693, citing and quoting, in part, SAC ¶ 17.) The paragraph in question cited articles in the university's newspaper highlighting the need for awareness of a "rape culture" on campus that was biased against victims of rape. (*Id*. ¶ 17 (a)-(c).) In that same paragraph, he cited a comment from a rape survivor criticizing the school for enabling sexual assaults "by sweeping them under the rug, and allowing privileged individuals to do whatever they want on campus." (*Id*. ¶ 17(d)(i).) The paragraph ends with a quotation from an article written by a Wooster professor who revealed that she is unnerved "when tensions flare on campus regarding issues of sexual assault and violence." (*Id*. ¶ 17(d)(ii).)

The Court concludes that these allegations are insufficient to support an inference of *gender* bias. Unlike the comments relied upon by the court in *Doe v. Columbia Univ.*, the remarks reproduced in the SAC are gender neutral and focus on Wooster's alleged refusal to

confront the problem of campus sexual assault. At most, these articles demonstrate that Wooster has previously been criticized by the press and the student body for being biased against alleged victims of sexual assault. This past criticism may supply a possible motive for favoring assault victims. It does not, however, suggest a basis for discrimination against male students. "Demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ*., 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015) (collecting cases); *see Doe v. Univ. of Cinci*., 173 F. Supp. 3d at 607 (an allegation pointing to bias in favor of sexual assault victims "is not the same as gender bias because sexual assault victims can be either male or female") (citation omitted); *see, e.g., Salau v. Denton*, 139 F. Supp. 3d 989, 999 (W.D. MO 2015) (similar). Plaintiff offers no allegations that, if believed, would have demonstrated that Johnston would have treated a female accused of sexual assault any differently in her investigation or that Wooster would have approached the complaint differently if the accused had been a female.[4] *See Sahm*, 110 F. Supp. 3d at 779 (rejecting claim of male student accused of sexual assault on similar basis); *see, e.g., Doe v. Case W. Reserve Univ.*, 2015 WL 5522001, at *5 (Title IX claim was subject to dismissal where the complaint was void of

---

[4] Wooster also criticizes plaintiff's reliance on *Doe v. Columbia Univ*. on the ground that it improperly applied the "minimal plausibility" standard to the plaintiff's pleading requirements under Title IX. Wooster complains that the Sixth Circuit has not adopted this reduced pleading standard, and, instead, continues to apply the traditional *McDonnell Douglas* burden-shifting framework to all Title IX claims, which "requires a plaintiff to demonstrate that the conduct of the university in question was motivated by a sexual bias." (Mot. Amend Opp'n at 755, quoting *Mallory*, 76 F. App'x at 639.) The Court agrees with Wooster. As a district court observed in *Austin v. Univ. of Oregon*, Case No. 6:15-cv-647-MC, 2016 WL 4708540 (D. Or. Sept. 8, 2016), "the Second Circuit's pleading standard would put universities in a double bind. Either they come under public fire for not responding to allegations of sexual assault aggressively enough or they open themselves to Title IX claims simply by enforcing rules against alleged perpetrators." *Id*. at *9.

allegations of gender bias); *Johnson v. W. State Colo. Univ.*, F. Supp. 3d 1217, 1226 (D. Colo. 2014) (similar).

Likewise, allegations that Wooster's more stringent stance against campus sexual assault is the result of pressure exerted by the Department of Education through the issuance of the Dear Colleague Letter fail to support a plausible inference of gender discrimination. "[I]t is not reasonable to infer that [a university] has a practice of railroading students accused of sexual misconduct simply to appease the Department of Education and preserve its federal funding." *Doe v. Univ. of Cinci.*, 173 F. Supp. 3d at 602 (rejecting a similar allegation as legally insufficient under Title IX). Moreover, it stands to reason that evidence that a university has endeavored to comply with federal guidance on Title IX cannot support a violation of Title IX. *See id.* at 607.

Because the allegations in the proposed SAC fail to state a claim under Title IX, any amendment to add such a claim would be futile. Plaintiff's motion to amend is, therefore, denied.

## II.  WOOSTER'S MOTION TO DISMISS

### A.     Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff v. Green*, 133 F.3d 421, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is

the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc*., 32 F. Supp. 3d 869, 874-75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint") (quotation marks and citations omitted); *see also Williams v. CitiMortgage, Inc*., 498 F. App'x 532, 536 (6th Cir. 2012) ("if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document") (quotation marks and citation omitted).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8. Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570 (citation omitted).

In deciding a motion to dismiss and/or a motion for judgment on the pleadings under

Rule 12, the Court generally may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment under Rule 56. As the Sixth Circuit has held, however, there are a number of exceptions to this rule. Indeed, it is well settled that, in ruling on a Rule 12 dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss) (citations omitted).

A review of the FAC reveals that plaintiff clearly references the Policy, the Student Handbook, and the Dear Colleague Letter. Moreover, these documents are integral to plaintiff's claims, and plaintiff does not suggest otherwise. Accordingly, the Court may consider these documents without converting the present motion to dismiss into one for summary judgment.

**B.      Sufficiency of Plaintiff's Claims**

Accepting the factual allegations in the FAC as true, the Court evaluates whether these allegations are sufficient, as a matter of law, to set forth the state law claims raised against Wooster by plaintiff.

*Breach of Contract*

In Count I of the FAC, plaintiff asserts a breach of contract claim against Wooster. Plaintiff alleges that a contractual relationship exists between plaintiff and Wooster by virtue of

13

his paying tuition and fees associated with attending Wooster. (FAC ¶ 64.) He claims that the terms of the parties' contract are set forth in various documents including the Student Handbook, and that Wooster breached these terms when it failed to provide plaintiff with an adjudicatory process that was "essentially fair." (*Id.* ¶¶ 65-66, 69.)

"Ohio treats the relationship between a university and its students as 'contractual in nature.'" *Al-Dabagh v. Case W. Reserve Univ.*, 777 F.3d 355 (6th Cir. 2015) (quoting *Behrend v. State*, 379 N.E.2d 617, 620 (Ohio Ct. App. 1977)); *Jefferson v. Univ. of Toledo*, No. 12AP-236, 2012 WL 4883203, at *3 (Ohio Ct. App. Oct. 16, 2014) (acknowledging the "long-standing principle that when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature") (citation omitted). The terms for such a contract are usually found in the college catalogue and handbook supplied to students. *See Buescher v. Baldwin Wallace Univ.*, 86 F. Supp. 3d 789, 797-98 (N.D. Ohio 2015) (collecting Ohio cases).

To establish a claim of breach of contract under Ohio law, a plaintiff must demonstrate: (1) the existence of an enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages suffered by the plaintiff as a result of the breach. *Jarupan v. Hanna*, 878 N.E.2d 66, 73 (Ohio Ct. App. 2007); *see Buescher*, 86 F. Supp. 3d at 797 (citing *McDade v. Cleveland State Univ.*, No. 14AP-275, 2014 WL 4557015 (Ohio Ct. App. Sept. 16, 2014)). "A party breaches a contract if he fails to perform according to the terms of the contract or acts in a manner that is contrary to its provisions." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (citation omitted).

In support of his breach of contract claim, plaintiff alleges that Wooster failed to comply

14

with the Student Handbook by: (1) considering a complaint of misconduct filed more than 30 days after the incident (FAC ¶ 69(a), (c)(i)(1)); (2) failing to provide written notice of the charges against him (*Id*. ¶ 69(b)); (3) failing to perform a threshold evaluation of the complaint allegations before starting an investigation (*Id*. ¶ 69(c)); (4) failing to conduct a full and fair investigation (*Id*. ¶¶ 57, 69(d)); (5) failing to act reasonably in setting a hearing date and resolving the allegations against him (*Id*. ¶ 69(e)); (6) failing to conduct a full and fair hearing before an unbiased hearing panel (*Id*. ¶¶ 59(b), 69(f), 69(g)); (7) presuming plaintiff was guilty (*Id*. ¶¶ 13(a), 60, 69(g)); (8) not permitting plaintiff to be represented by counsel (*Id*. ¶¶ 55(c), 59(d), 69(h)); and (9) finding plaintiff responsible without sufficient evidence (*Id*. ¶ 69(i)). The Court will address each alleged breach in turn.

<u>30 Day Requirement</u>

Plaintiff maintains that this is the "clearest breach." (MTD Opp'n at 499.) The Student Handbook provisions in question provide:

> Any member of the campus community may file charges against any student for misconduct by filing a written charge with the Chairperson of the Judicial Board or a member of the Residence Hall staff and/or the Dean of Students staff within thirty (30) days following an incident.

> In addition, a member of the Residence Hall staff or the Dean of Students staff may file a written charge of suspected violation of the code or College policy with the Chairperson of the Board within thirty (30) days after first having knowledge of an incident.

(FAC ¶ 69(a); Student Handbook at 253.) According to plaintiff, the 30-day window identified in these provisions operates "like a statute of limitations[,]" and implies that a student may only be charged with a violation within the same 30-day period. (MTD Opp'n at 499.) Because the charges against plaintiff were filed months after the November 1, 2015 incident, plaintiff asserts

15

that Wooster breached their agreement by going forward with the disciplinary proceedings.

While these provisions afford a student a right to bring a charge within 30 days of the incident (or allow a staff member to bring a charge within 30 days of a learning of the incident), it does not follow that they protect a student from being adjudicated with a charge of sexual assault or misconduct filed more than 30 days after the incident, and the language of the provisions cannot be reasonably construed as conferring this right. *See Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996) (It is the role of the court to discern the intent of the parties, which is "presumed to reside in the language they choose to use in their agreement.") Given the fact that the Student Handbook specifically sets forth the rights afforded to those accused of violating the school's conduct and academic integrity rules, the Court will not infer a right that was not agreed to by the parties.

In any event, the Student Handbook permits any staff member to bring a complaint within 30 days after he or she became aware of the incident. The Student Handbook also affords the Judicial Board Chair a right to extend, at his or her discretion, any time limit in the judicial process. Because Johnston could have pursued her own complaint within 30 days from the time when she learned of Roe's allegation that plaintiff had sexually assaulted her (i.e., when, in December 2015, she changed her charge to one of rape), and the Judicial Board Chair retained the right to extend any deadlines, a complaint filed more than 30 days after the incident cannot serve as a material breach of the agreement.

Indeed, as the Dear Colleague Letter makes clear, Title IX *requires* colleges and universities to investigate and, if appropriate, prosecute, all claims of sexual assault by students and other members of the campus community, even if the alleged victim chooses not to go

16

forward with a complaint. *See* Dear Colleague Letter, *supra*. at 4. Plaintiff's interpretation of the Student Handbook would violate federal law as it would prohibit Wooster from following up on claims of sexual assault merely because the victim did not come forward within a 30 day window. The Court will not endorse a contract interpretation that obligates one party to violate the law. *See generally The CIT Grp. Enter. Fin., Inc. v. Brown Cnty*., 25 N.Ed.3d 473, 479 (Ohio Ct. App. 2014) ("Contracts made in violation or disregard of statutes are void and courts generally will not aide in enforcing such contracts . . . .").

<u>Written Notice of the Charges</u>

Plaintiff alleges that Wooster failed to provide him with notice of the charges against him. (FAC ¶ 69(b).) Alternatively, he complains that the notice "was not provided in a timely manner" because he did not receive the investigator's report until one week before the hearing. (*Id*. at 69(b)(i).) These allegations are insufficient to form the basis of a breach of contract claim because, accepting all of the complaint allegations as true, Wooster did in fact notify plaintiff of the charged offenses. On December 18, 2015, Johnston notified plaintiff that a female student had filed a complaint of sexual misconduct against him. (FAC ¶ 48.) On December 20, 2015, Johnston advised plaintiff that Wooster had received a complaint that he had violated the Policy. (*Id*. ¶ 50.) While these initial notices may not have conveyed to him the "complete parameters" of the allegations against him, plaintiff concedes that he was apprised of the "exact nature" of the charges on February 19, 2016 when he received a copy of the investigator's report, more than a week before the hearing. (*Id*. ¶ 58.)

The Student Handbook does not require that the written charges against the accused be provided within any specific time period or contain any specific information. (*See* Student

Handbook at 252 ["The accused will be presented with the charges against him or her in writing."].) Still, plaintiff alleges that the timing of the notice he received violated Wooster's contractual obligation to ensure that the judicial process is fundamentally fair. The Student Handbook provides that the judicial process "is informally structured and attempts to meet a standard of 'essential fairness.' This basically means the following . . . ." (Student Handbook at 252.) The document then goes on to enumerate certain specific rights afforded to the accused student: presentment of the charges in writing, an opportunity to a hearing where he will be able to defend himself and where witnesses will be required to have direct knowledge in order to testify, and the presumption of innocence. (*Id*.)

There are several problems with plaintiff's argument. First, the general goal of affording an "essentially fair" process is followed by several specific ways in which this goal is achieved. "Under Ohio law, [a] specific provision controls over a general one." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 903 (6th Cir. 2006) (quotation marks and citation omitted). The specific provision regarding written notice of the charges, which does not set forth a specific time in which such notice must be provided, controls over the general goal of affording an essentially fair judicial process.

Second, the notice plaintiff received was fundamentally, or essentially, fair. "The proper focus in analyzing whether a private university provided fundamental fairness is whether the University adhered to its misconduct procedure." *Pierre v. Univ. of Dayton*, 143 F. Supp. 3d 703, 713 (S.D. Ohio 2015) (citation omitted). "The question is whether the proceedings fell within the range of reasonable expectations of one reading the relevant rules, an objective reasonableness standard." *Id*. (citations omitted). Additionally, courts consider whether the disciplinary process

afforded by the academic institution was "conducted with notions of basic fairness." *Id.* (quotation marks and citation omitted). Courts have found that holding a hearing with far less notice than was provided here is not fundamentally unfair. *See, e.g., Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 464 (S.D.N.Y. 2015) (finding conducting the hearing within 3 days of notice of charges was fair, noting that "[i]ndeed, courts have not disapproved of notice of charges given just one day prior to the hearing") (citations omitted).

<u>Threshold evaluation</u>

Plaintiff also complains that Wooster breached the Student Handbook by violating an "implied obligation" to perform a threshold evaluation of the allegations in the complaint before starting an investigation. Plaintiff concedes that the Student Handbook does not require a threshold evaluation; yet he argues, without citing authority, that essential fairness demands it. However, plaintiff's own allegations confirm that Wooster in fact performed a threshold evaluation. Plaintiff alleges that Wooster's Title IX Coordinator, Johnston, met with Roe to discuss her complaint, communicated with Roe regarding the allegations on several occasions, and communicated with Doe regarding the complaint—all prior to beginning the formal investigation. (FAC ¶¶ 35, 39-50.) While plaintiff clearly disagrees with Johnston as to her initial evaluation of the complaint and her decision to go forward on Roe's complaint, he has failed to allege facts that would support a claim that Wooster breached the Student Handbook by failing to conduct a threshold evaluation.

<u>Full and Fair Investigation</u>

Next, plaintiff contends that Wooster failed to "conduct a full and fair investigation of the claims" against him. (FAC ¶ 69(d).) The Student Handbook contains no requirements as to when

an investigation must be commenced or by what means an investigator must conduct any interviews; instead it only requires that an investigation be conducted. Here, the FAC clearly asserts that Wooster started an investigation, and "retained Katie Clifford, an attorney, legal education consultant and partner" with a law firm to conduct the investigation. (*Id*. ¶¶ 51-52.) The FAC further provides that Clifford interviewed a number of witnesses, including plaintiff and Roe, during her three week investigation. (*Id*. ¶¶ 53-56.) *See, e.g., Dempsey v. Bucknell Univ*., Civil Action No. 4:11-CV-1679, 2012 WL 1569826, at *18 (M.D. Pa. May 3, 2012) (student's breach of contract claim failed where complaint allegations demonstrated that an investigation into the assault complaint was conducted).

The only other allegations plaintiff makes with respect to the investigation that Attorney Clifford performed involved his conclusory belief that Clifford had no "real experience" investigating allegations of sexual assault, that she was not a law enforcement officer or prosecutor, and that she had once told a sorority that there "is a large percentage of underreporting by victims of sexual assault . . . ." (*Id*. ¶¶ 51-52.) The Student Handbook does not dictate the credentials the investigator must possess. Moreover, an acknowledgment of the statistical fact that sexual assault often goes unreported does not support the inference that the investigator was biased against plaintiff. These allegations are legally insufficient to support a breach of contract claim.

<u>Reasonable Hearing Date</u>

According to plaintiff, Wooster also breached the Student Handbook by acting unreasonably in setting a hearing date and timely resolving the allegations against him. There is nothing in the Student Handbook that requires investigations and/or hearings to be conducted

within a specific time. Moreover, even if such deadlines existed, the Judicial Board Chair may, within his discretion, extend "any of the maximum time limits in the judicial process." (Student Handbook at 258.)

Still, the FAC alleges that the "Department of Education has suggested that all investigations into claims of sexual assault should be completed, when possible, within 60 days." (FAC ¶ 69(e)(i).) Presumably, plaintiff is referencing the Dear Colleague Letter, though plaintiff has misrepresented the nature of the guidance provided by the OCR. Instead of setting a time-period in which the investigation must be completed, the Dear Colleague Letter provides simply, "[b]ased on OCR's experience, a typical investigation takes approximately 60 calendar days following receipt of the complaint," and that "[w]hether OCR considers complaint resolutions timely" will vary depending on the circumstances of each case. Dear Colleague Letter, *supra*, Note 2. Of course, the Department of Education guidance is not legally binding. *See Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 291-92, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1988) (there is no private right of action for alleged violations of Title IX administrative requirements); *Moore v. Regents of the Univ. of Cal*., No. 15-CV-05779-RS, 2016 WL 2961984, at *5 (N.D. Cal. May 23, 2016) (same); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 758 (E.D. Tenn. 2005) (same). In any event, it forms no part of the contract between Wooster and Doe.

<u>Biased Panel</u>

Plaintiff also alleges that the disciplinary process was contractually flawed because the hearing was not conducted before an unbiased panel. (FAC ¶¶ 59(b), 69(f), 69(g).) Yet, plaintiff's "mere belief that [school officials] acted with such ulterior motives is insufficient to state a claim for relief." *Doe v. Univ. of Cinci.*, 173 F. Supp. 3d at 602 (citations omitted).

Moreover, his reliance on innocuous actions by university officials—such as hand signals, eye rolls, and posing "irrelevant questions"—brings him no closer to establishing the existence of a nefarious intent. Even his claim that the panel impermissibly relied on hearsay is insufficient, as there is "no prohibition against the use of hearsay evidence in school disciplinary hearings." *Id.* (citing *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 926 (6th Cir. 1988)); *see also Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005) (school disciplinary boards are not bound by formal rules of evidence or rules of criminal procedure) (citations omitted); *Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245, 1250 (E.D. Mich. 1984) ("While a university cannot ignore its duty to treat its students fairly, neither is it required to transform its classrooms into courtrooms."), *aff'd*, 787 F.2d 590 (6th Cir. 1986).

<u>Presumption of Guilt</u>

Plaintiff next alleges that Wooster breached its agreement with him when the panel members presumed his guilt. It is undisputed that the Student Handbook ensures that a student who is accused of violating the school's conduct code is "presumed innocent[.]" (Student Handbook at 252.) Plaintiff relies primarily upon his own unsubstantiated belief that Wooster officials from the outset treated him as though he was guilty. (FAC ¶ 69(g) ["The conduct of [the] entire process treated [him] as if he was guilty from the start"]; ¶ 69(g)(1) [Johnston "acted from the beginning as someone who 'believed' [Roe] without conducting any investigation."]. In addition to these conclusory allegations, plaintiff offers another—that Wooster was scared into presuming the guilt of all accused of sexual assault by receipt of the Dear Colleague Letter. Yet, he cites no actual evidence that Wooster felt "pressure to presume guilt." Such allegations fail to

state a plausible claim for relief.[5] *See Doe v. Univ. of Cinci.*, 173 F. Supp. at 602 (rejecting similar allegations as legally insufficient).

Additionally, plaintiff maintains that he was "treated as if guilty" by virtue of the fact that he was "prohibited from presenting relevant evidence that would undermine the credibility" of Roe, including accommodations she received and the steps Johnston took "to encourage her to make a report." (FAC ¶ 69(g)(ii).) The Student Handbook does not provide for the admission of such evidence. While it affords the accused student the right to present witnesses in defense, those witnesses must have "direct knowledge of the incident or its impact." (Student Handbook at 252.) Evidence regarding alleged impropriety by university officials after the complaint was filed would not fall into the category of the "incident or its impact." Further, as the Student Handbook makes clear, the school's judicial system "should not be confused with the state and federal criminal justice systems." (*Id.*) Fundamental fairness does not dictate that a school disciplinary hearing adhere to all procedural safeguards afforded defendants in a court of law. *Jaksa*, 597 F. Supp. at 1250 (collecting cases). These allegations are insufficient to support a breach of contract claim.

<u>No Representation by Counsel</u>

Plaintiff concedes that the Student Handbook does not permit the attendance of counsel for the accused. (Student Handbook at 253 ["Attorneys for the accused or accuser may not be present at a judicial hearing."].) Nonetheless, the FAC alleges that "[t]he notion of a young man

---

[5] Plaintiff also cites the fact that a student advisor told him that "her impressions was [sic] that John Doe had to prove his innocence as opposed to 'innocent until proved guilty.' She also indicated that some recent policy changes made it more difficult for students to defend themselves." (FAC ¶ 60(b)(ii).) Yet, plaintiff has failed to set forth allegations that would support a finding that the unnamed student advisor was a board member or university official, or otherwise served as Wooster's agent. Without more, the impression of an unknown student advisor cannot serve to establish a breach of contract.

being able to defend himself competently in this intensely emotional situation is absurd." (FAC ¶ 69(h)(i).) Yet, it is well established that "colleges and universities need not allow active representation by legal counsel" at disciplinary hearings in order to comply with notions of fairness. *See Flaim*, 418 F.3d at 636 (collecting cases). This allegation does not set forth a breach of contract claim.

<u>Insufficient Evidence</u>

Plaintiff further asserts that Wooster breached its agreement with plaintiff when it found him responsible without sufficient evidence. (FAC ¶ 69(i).) In support, he offers two arguments. First he complains that there was no "physical evidence" to support the allegations of sexual assault. (*Id*. ¶ 69(i)(ii).) He further avers that the only witness presented against him, Roe, "was not a witness a reasonably prudent fact-finder would rely upon." (*Id*. ¶ 69(i)(iii).) There is no requirement, contractual or otherwise, that a finding of guilty in a student disciplinary proceeding must be based on physical evidence. As for assessing the credibility of hearing witnesses, such a determination is well within the discretion of the disciplinary board, and is not for the courts to second guess. *Pierre*, 143 F. Supp. 3d at 713 ("the issue before this Court is not whether the [hearing board] should have believed a certain party's version of events"); *Doe v. Univ. of the South*, 687 F. Supp. 2d at 755 (it is not for the courts to review "whether a sexual assault occurred, whether any such acts were consensual, or who, as between John Doe and the Complainant is credible").

<u>Good Faith and Fair Dealing</u>

In addition to alleging the breach of express contract terms, plaintiff also alleges a breach of the implied duty of good faith and fair dealing. "In Ohio, 'public policy dictates that every

contract contain an implied duty for parties to act in good faith and to deal fairly with each other.'" *Fifth Third Mortg. Co. v. Chicago Title Ins. Co*., 758 F. Supp. 2d 476, 485 (S.D. Ohio 2010) (quoting *Littlejohn v. Parrish*, 839 N.E.2d 49, 54 (Ohio Ct. App. 2005)). "However, this implied duty does not supplant express contract terms." *Id*. (citation omitted). "Rather, it requires good faith in performing those contract terms." *Id*. (citing *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996) ("good faith is part of a contract claim and does not stand alone")). Because plaintiff has failed to assert facts that would support a claim that Wooster breached the express terms of the Student Handbook, he cannot use the same facts to allege a breach of the implied duty of good faith and fair dealing. *See Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 465 (6th Cir. 2013) (citation omitted) ("The district court properly dismissed Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because, under Ohio law, a breach-of-contract claim subsumes any claim for breach of the duty of good faith and fair dealing.") (citation omitted); *see, e.g., Yu v. Vassar Coll*., 97 F. Supp. 3d 448, 482 (S.D.N.Y. 2015) (student's breach of "good faith" contract claim under similar NY law dismissed).

Because plaintiff has failed to state a claim for breach of contract under Ohio law, this claim is dismissed.

*Promissory Estoppel and Negligence*

Plaintiff's promissory estoppel and negligence claims against Wooster rest on "promises" set forth in the Student Handbook and the disciplinary process set forth therein, and relies on the same allegations as his legally insufficient contract claim. With respect to promissory estoppel, the FAC provides:

As described above, the Scot's Keys and other official College publications constitute promises and representations that the College intended to induce reliance on the part of John Doe. In reasonable reliance, John accepted the College's offer of admission and incurred the cost of tuition and related expenses based on the College's representations that it would honor its express and implied promises, including the guarantees of fundamental fairness, and the implied covenant of good faith and fair dealing.

(FAC ¶ 73.) Similarly, plaintiff's negligence claim states:

Having put in place a student disciplinary process, the College owed a duty of care to John Doe and others to conduct that process in a non-negligent manner and with due care. The College officials who directed and implemented that process owed John Doe the same duty of care. The College is responsible for the conduct of those acting on its behalf under the theory of *respondet* [sic] *superior*.

(*Id.* ¶ 79.)

It is clear that these claims are premised on the same allegations that support plaintiff's breach of contract claim—the terms of the disciplinary process set forth in the Student Handbook. "However, Ohio law bars a promissory estoppel claim when there is an express contract between the parties." *Loadman Grp., L.L.C. v. Banco Popular N. Am.*, No. 4:10cv1759, 2013 WL 1150125, at *9 (N.D. Ohio Mar. 19, 2013) (citation and quotation marks omitted). Similarly, because the existence of a valid contract governs the relationship between the parties, plaintiff has no cause of action in negligence for the same alleged conduct. *See Valente v. Univ. of Dayton*, 689 F. Supp. 2d 910, 924 (S.D. Ohio 2010) (because the duties the student who was disciplined identified all arose from his contractual relationship with the university, he proffered no grounds upon which to base a negligence action).

*Intentional Infliction of Emotional Distress*

The existence of a valid contract also prevents plaintiff from maintaining a claim for intentional infliction of emotional distress as this claim is clearly premised on Wooster's alleged

violation of its contractual obligations. The FAC provides that "[t]he College and its employees intended to cause John Doe serious emotional distress through the negligent imposition of discipline in violation of John Doe's contractual rights." (FAC ¶ 87.) It is well settled that a plaintiff cannot maintain a cause of action for emotional distress caused by an alleged contract breach. *See Valente*, 689 F. Supp. 2d at 927 (dismissing a student's intentional infliction of emotional distress claim where it was based on the same alleged conduct as his breach of contract claim).

Plaintiff's emotional distress claim fails for the additional reason that plaintiff has not alleged facts that, if believed, would demonstrate that Wooster's conduct was "extreme and outrageous." *Fitzgerald v. Roadway Express, Inc*., 262 F. Supp. 2d 849, 857-58 (N.D. Ohio 2003) (citation omitted). To support such a claim, the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Godfredson v. Hess & Clark, Inc*., 173 F.3d 365, 376 (6th Cir. 1999) (citing *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am*., 453 N.E.2d 666, 671 (Ohio 1983)). Because it is undisputed that Wooster took the action it did against plaintiff in response to a claim of sexual assault lodged by another student, the alleged conduct in this case fails to meet this demanding standard. *See, e.g., Fellheimer v. Middlebury Coll*., 869 F. Supp. 238, 247 (D. Vt. 1994) ("A College's decision, when confronted with a female student's accusation of rape, to confront the male student with the charges, hold a hearing, and support the findings of the initial tribunal on appeal, even where various procedural errors are alleged, cannot form the basis for an [intentional infliction of emotional distress] claim.").

### III. CONCLUSION

For all of the foregoing reasons, Wooster's motion to dismiss is granted, and plaintiff's motion to amend is denied.[6] Moreover, because Wooster has been dismissed from this action, plaintiff's motions to proceed anonymously against Wooster and motion for expedited discovery are denied as moot. This case will proceed solely against defendant Jane Roe on plaintiff's claims against her for intentional infliction of emotional distress and defamation.

**IT IS SO ORDERED**.

Dated: March 17, 2017

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[6] In his motion for expedited discovery (Doc. No. 3), plaintiff maintains that "[e]xpedited discovery is necessary to allow [plaintiff] to adequately prepare a Motion for a Preliminary Injunction." (*Id*. at 128.) As set forth above, the FAC seeks an injunction restoring plaintiff as a student at Wooster and prohibiting further disciplinary proceedings against him. (FAC at 180.) Because the Court has dismissed all claims against Wooster, plaintiff's request for expedited discovery to pursue injunctive relief against Wooster is denied as moot. Plaintiff also seeks leave to proceed anonymously against Wooster. (Doc. No. 2.) Inasmuch as the Court has now dismissed all claims in the FAC raised against Wooster, this motion is also properly denied as moot. However, his motion (Doc. No. 12) to proceed anonymously against defendant Roe is granted.