# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | CASE NO. 5:16-cv-979 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| THE COLLEGE OF WOOSTER, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion of defendant Jane Roe ("Roe") to dismiss the claims asserted against her by plaintiff John Doe ("plaintiff"). (Doc. No. 32 ["Roe MTD"].) Plaintiff opposes the motion (Doc. No. 36 ["Roe MTD Opp'n"]), and Roe has filed a reply. (Doc. No. 42 ["Roe MTD Reply"].) For the reasons to follow, Roe's motion is denied.

## I. BACKGROUND

On March 17, 2017, the Court issued a ruling that granted the motion of defendant College of Wooster ("Wooster") to dismiss the claims asserted against it. (Doc. No. 28 (Memorandum Opinion ["MO"]).) The Court assumes familiarity with this prior decision and will only reproduce that portion of the decision that will assist the reader in understanding the dispute between plaintiff and Roe.

> According to the [First Amended Complaint ("FAC")], plaintiff and Roe were both students at Wooster. ([Doc. No. 6] ¶¶ 3, 5.) The two were "good friends" who had engaged in sexual contact in the past, but had never had sexual intercourse. (*Id*. ¶ 21.) On the evening of November 1, 2014, Roe was drinking with a number of her friends, first in a dorm and later at a couple of parties, including one hosted by a fraternity (*Id*. ¶ 23.) Roe saw plaintiff at the fraternity party, but the two did not speak. (*Id*. ¶ 25.) Later that evening, plaintiff called Roe requesting her assistance in getting into the dorm because he had misplaced his access card. (*Id*. ¶ 26.) After she admitted plaintiff into the dorm, Roe invited him

into her room. The two removed their clothing and started kissing on Roe's bed. (*Id*. ¶ 28.) Plaintiff twice asked Roe if she wanted to have sex. Although she said "no," she continued to kiss Doe. (*Id*.) Eventually, Doe got out of bed and started to leave. Roe wanted plaintiff to "stay and cuddle with her." (*Id*. ¶ 29.) The two argued, in part because plaintiff did not want "that type of relationship." (*Id*.) Plaintiff left the room without having intercourse with Roe. In fact, plaintiff maintains that he has never had intercourse with Roe. (*Id*. ¶ 30.)

"On May 12, 2015—more than six months after the" incident—Roe filed a Report of Discriminatory Harassment/Sexual Misconduct with Wooster. (*Id*. ¶ 33, internal quotation marks and citation omitted.) In her report, she did not state that plaintiff had sexual intercourse with her. Instead, she wrote, "As [Doe] tried to remove his clothes, along with mine, I was able to mule kick him off of me. He then yelled in my face, shook me, and left the room." (*Id*. ¶ 33(c), internal quotation marks and citation omitted.) Angela Johnston is the Secretary of Wooster and serves as the Title IX coordinator for the institution. (*Id*. ¶¶ 15(b), 34.) After receiving Roe's complaint, she emailed Roe and asked for a meeting. Roe responded that she was studying abroad but would "touch base" with Johnston when she returned on June 3, 2015. (*Id*. ¶ 35.)

\*\*\*

On August 5, 2015, Johnston emailed Roe and, again, requested a meeting. Roe stated that she would consider meeting with Johnston when she returned to campus. (*Id*. ¶ 39.) Roe advised Johnston that her first year at Wooster was "horrible" and that she had not done well. (*Id*. ¶ 39(a).) Johnston responded by assuring her, "I'm sorry you didn't have a good first year; I'll do what I can to help you get off to a good start this year." (*Id*. ¶ 39(b).)

\*\*\*

Roe did not actually meet with Johnston until December 2, 2015. (*Id*. ¶ 43; *see id*. ¶¶ 41-42.) It was during this meeting that Roe "changed her story and told Johnston that she had been raped by John Doe (i.e. that John Doe had compelled her to have intercourse by force)." (*Id*. ¶ 43.)

\*\*\*

On December 18, 2015, Johnston "informed John Doe by email, 'a female student has filed a complaint of sexual misconduct against you.'" (*Id*. ¶ 48.) He was not told the identity of the complainant at that time. Two days later (December 20, 2015), Johnston informed Doe that Wooster had received a complaint that he had violated the Policy. (*Id*. ¶ 50.) Wooster started its investigation into the complaint on December 22, 2015. (*Id*. ¶ 51.) The private attorney retained by Wooster to

> investigate the matter, Katie Clifford, interviewed plaintiff on January 19, 2016. (*Id*. ¶¶ 52-54.) Clifford's investigation was completed by February 10, 2016. (*Id*. ¶ 53.)

(Doc. No. 28 at 1002-04, footnote omitted.[1])

Plaintiff received a copy of the investigative report on February 19, 2016, at which time he learned the "exact nature of the charges against him[.]" (FAC ¶ 58.) On March 2, 2016, Wooster conducted a hearing on the charge that plaintiff had violated the school's Equal Opportunity Policy. (*Id.*) At the conclusion of the hearing, plaintiff was found "guilty" of violating the policy. (*Id*. ¶ 59.) He was ultimately expelled from Wooster.

On April 25, 2016, plaintiff initiated the present action in federal court on the basis of diversity jurisdiction solely against Wooster, asserting claims for breach of contract, promissory estoppel, negligence, intentional infliction of emotional distress, and defamation. (Doc. No. 1 (Complaint).) On May 9, 2016, plaintiff filed the FAC. In addition to other changes, the FAC added Roe as a defendant and asserted separate claims against her for defamation and intentional infliction of emotional distress.

Both of the state law claims asserted against Roe are premised on statements Roe allegedly made after and about the November 1, 2014 incident. The FAC asserts that the sexual misconduct report Roe filed with Wooster's Title IX office on May 12, 2015, which served as the impetus for Wooster's disciplinary proceedings, contained false and defamatory statements against plaintiff, "specifically the false allegation that he had engaged in conduct which could be

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

considered to be a criminal sex offense under Ohio law." (FAC ¶ 33(f).) The FAC further provides that, during Roe's interview with Wooster's investigator on January 19, 2016, Roe volunteered that "immediately after the incident she told a male friend, J.U., what had happened." (*Id*. ¶ 54(b).) The pleading further asserts that, "the next day [Roe] told a female friend, M.C., that she had been raped." (*Id*.) According to plaintiff, all of Roe's statements were defamatory and resulted in the intentional infliction of emotional distress. (*Id*. ¶¶ 54(f), 92, 94-5, 99-100.)

As set forth above, on March 17, 2017, the Court granted Wooster's motion to dismiss the claims against it, leaving only the claims asserted against Roe. Roe now moves to dismiss these remaining claims. She posits that plaintiff's defamation claim is time-barred, that she is entitled to either an absolute or qualified privilege for any statements she made regarding the November 1, 2014 incident, and that both claims fail to set forth a cause of action under Ohio law.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is the Court required to accept as true complaint allegations that are contradicted by public records

4

and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 874-75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint") (quotation marks and citations omitted); *see also Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document") (quotation marks and citation omitted).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8. Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the plausibility standard is not equivalent to a "'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

5

level, on the assumption that all of the complaint's allegations are true (even if doubtful in fact)[.]" *Twombly*, 550 U.S. at 555-56 (citations, including internal citations, omitted).

III. DISCUSSION

A. Timeliness of Defamation Claim

In Count V of the FAC, plaintiff alleges that Roe "defamed John Doe by falsely stating that he committed a rape or sexual assault." (FAC ¶ 92.) He claims that "[t]hese statements are defamatory *per se* and also reflected injuriously on John Doe's reputation, exposing him personally to public hatred, contempt, ridicule, shame or disgrace, and affecting John Doe adversely in his future pursuit of his trade, business or profession." (*Id.*) According to plaintiff, the statements were made "about John Doe" (*id*. ¶ 93), and were "published, or made . . . to various persons at [Wooster] including, but not limited to, other students, College staff, and the College hearing panel." (*Id*. ¶ 94.)

"Defamation, which includes both slander and libel, is the publication of a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Savoy v. Univ. of Akron*, 15 N.E.3d 430, 435 (Ohio Ct. App. 2014) (quoting *Jackson v. Columbus*, 883 N.E.2d 1060, ¶ 9 (Ohio 2008) (further quotation marks and citations omitted)). The essential elements of a defamation action under Ohio law, whether slander or libel, "are that the defendant made a false statement, that the false statement was defamatory, that the false defamatory statement was published, that the plaintiff was thereby injured, and that the defendant acted with the required degree of fault." *Daubenmire v. Sommers*,

6

805 N.E.2d 571, 585 (Ohio Ct. App. 2004) (citing *Celebrezze v. Dayton Newspapers, Inc.*, 535 N.E.2d 755, 759 (Ohio Ct. App. 1988)).

A one year statute of limitations applies to all defamation claims raised under Ohio law. *See* Ohio Rev. Code § 2305.11(A) ("An action for libel [or] slander . . . shall be commenced within one year after the cause of action accrued. . . ."). "'[T]he statute of limitations begins to run when the allegedly defamatory words are first spoken or published regardless of the aggrieved party's knowledge of them.'" *Friedler v. Equitable Life Assur. Soc. of U.S.*, 86 F. App'x 50, 53 (6th Cir. 2003) (quoting *Sabouri v. Ohio Dep't of Job & Family Servs.*, 763 N.E.2d 1238, 1240-41 (Ohio Ct. App. 2001)); *see Rainey v. Shaffer*, 456 N.E.2d 1328, 1330-31 (Ohio Ct. App. 1983) (citation omitted). "This is known as the 'first publication' rule." *Gentile v. City of Solon*, No. 1:12CV1657, 2013 WL 123621, at *2. (N.D. Ohio Jan. 9, 2013). The first publication rule bars claims for defamation even where a defendant repeats allegedly defamatory statements several times within one year of the filing date of the claim, so long as the first statement occurred more than a year prior to filing suit. *See id.* at *3.

Applying the first publication rule, Roe argues that plaintiff's defamation claim against her is time-barred because the first publication of the allegedly defamatory statements occurred on November 1, 2014 or November 2, 2014 when Roe told J.U. and M.C. about the alleged assault. (Roe MTD at 1053, citing FAC ¶ 54.) Plaintiff filed his complaint against Roe on May 9, 2016, 18 months after the alleged statements to M.C. and J.U. (*See* FAC.) According to Roe, the "alleged repetition of her accusations at any later time, such as her statements made during Wooster's adjudication of her claim, do not restart the statute of limitations[.]" (Roe MTD at 1053.).

7

Plaintiff offers a variety of arguments as to why the first publication rule does not apply in this context, one of which being that the oral statements Roe allegedly made to other students in November 2014 were not the same statements she eventually made to Wooster's IX coordinator.[2] (Roe MTD Opp'n at 1079.) Plaintiff further notes that the "rule has never been applied to bar a defamation claim for a written statement when there was a prior oral statement concerning the same subject."[3] (*Id.*)

Based on the pleadings, alone, the Court cannot determine whether the prior oral statements Roe allegedly made to classmates are the same as the formal sexual harassment report she eventually filed with Wooster. The FAC merely indicates that, in the days immediately following the incident, Roe told one student "what had happened" and informed another student "that she had been raped." (FAC ¶ 54(b).) Because it is not clear from the pleadings alone that plaintiff's defamation claim is time-barred, dismissal at this stage would be inappropriate. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (noting that, while a court may dismiss an action where complaint allegations plainly show that the claims are time-barred, Rule 12(b)(6) is "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations") (citation omitted)*; see also Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L.

---

[2] Plaintiff also maintains that the defamation at issue in this case first occurred on May 12, 2015, when Roe filed her sexual misconduct report with Wooster. He claims that he is not seeking to recover for prior slanderous comments made to students, noting that they do not even qualify as defamation under Ohio law because he does not allege that these statements were made about him. (Roe MTD Opp'n at 1077.) However, a fair reading of the FAC reveals that plaintiff is seeking to recover for statements Roe made to "*other students*, College staff, and the College hearing panel." (FAC ¶ 94, emphasis added.) The only factual allegations relating to statements to students involve those November 2014 student statements. Additionally, plaintiff claims that all of the actionable statements were made "*about John Doe*." (*Id.* ¶ 93, emphasis added.) Such pleading allegations would be sufficient to set forth a claim of defamation under Ohio law.

[3] According to plaintiff, while Count V is labeled "defamation," it is better understood as a libel claim. (Roe MTD Opp'n at 1078.) Citing case law providing that slander and libel actions accrue at different times, plaintiff maintains that prior slanderous remarks can never serve to trigger the statute of limitations for a defamation claim premised entirely on libelous statements. (*Id.* at 1078-79.)

Ed 2d 798 (2007) (statute of limitations is an affirmative defense and plaintiff generally need not plead the lack of an affirmative defense to state a valid claim). Without deciding the issue on an undeveloped record and a fully-developed briefing addressing the issue, the Court notes also that it has reservations about the propriety of applying the first publication rule to prior oral communications.[4] This is especially troubling in the context of this case where, depending on how the facts develop, the prior oral statements may have been made in confidence.[5]

Based on the foregoing, the Court denies Roe's motion to dismiss plaintiff's defamation claim as time-barred without prejudice. On summary judgment, the parties should be prepared to address whether the first publication rule applies to prior oral statements, in general, and, if the

---

[4] Roe cites two cases that she believes support her position: *Kontar v. Am. Geophysical Union*, Case No. 3:15CV425, 2016 WL 2594160 (N.D. Ohio May 5, 2016); and *Gentile v. City of Solon*, No. 1:12CV1657, 2013 WL 123621 (N.D. Ohio Jan. 9, 2013). In *Kontar*, the district court found that plaintiff's defamation claims were time-barred because they accrued when allegedly false accusations that the plaintiff was intoxicated at a dinner and inappropriately touched a female server were first made in an ethics committee meeting and not when the same statements became the focal point of the committee's final report recommending plaintiff's removal. On appeal, however, the Sixth Circuit reversed, in part. *Kontar*, No. 16-3491, 2017 WL 3402078 (6th Cir. Jan. 5, 2017). Separating out the defamation and libel into two different claims, the court found that the slander claim based on the statements made at the meeting was time-barred under Ohio Rev. Code § 2305.11, but did not find the libel claim relating to the subsequent report was also untimely. Instead, the court remanded for a determination of whether a report is "published" when it is merely circulated amongst members of the same board. *Id*. at *3. If anything, this ruling provides some support for plaintiff's position that slander and libel are to be considered separately. The decision in *Gentile* comes a little closer. There, the plaintiff argued that his defamation claim accrued on the date the defendant made defamatory statements in trial, even though they previously appeared in the police report, because the trial was the date of the injury. In rejecting plaintiff's republication argument, the court emphasized that "[t]he important and definitive inquiry is not when the Plaintiff suffered harm as a result of the defamatory statements, but rather when the defamatory statements were originally spoken." *Id*. at *3 (citing *Rainey v. Shaffer*, 456 N.E.2d 1328 (Ohio Ct. App. 1983)). While the court also underscored the fact that "Ohio courts have consistently refused to apply any proposed continuing defamation rule, instead opting to apply the 'first publication' rule[,]" *see id*., this case represented another situation where a defamation claim was time-barred because of the earlier publication of a written public document; there, a police report.

[5] Outside of Ohio, courts have expressed concern about applying this rule to private oral statements. *See, e.g., Smith v. IMG Worldwide, Inc.*, 437 F. Supp. 2d 297, 306 (E.D. Pa. 2006) (distinguishing defamation in a private conversation); *Rickman v. Cone Mills Corp*., 129 F.R.D. 181, 185 n.5 (D. Kan. 1989) (recognizing that the discovery rule has been applied to "unusual" defamation cases where the alleged defamation has been of a confidential or secretive nature); *River Oaks Convalescent Ctr., Inc. v. Coahoma Cnty.*, 280 F. Supp. 2d 565, 568 (N.D. Miss. 2003) (noting that, while Mississippi law generally applies the single publication rule to prior defamatory statements, it permits the discovery rule to toll the statute of limitations where the publication of the prior oral statements was "secretive or inherently undiscoverable") (quotation marks and citation omitted).

9

prior oral statements were made in confidence, whether the discovery rule is available to toll the statute of limitations.

**B.  Immunity**

Roe also insists that she is entitled to absolute or qualified immunity for all of the statements she made in connection with her sexual assault complaint and the resulting disciplinary proceedings. Ohio law recognizes an absolute and a qualified privilege for certain statements that constitute a defense to a defamation action. *Constanzo v. Gaul*, 403 N.E.2d 979, 982 (Ohio 1980). "The basic difference between the two as generally stated is that complete protection is afforded by absolute privilege, whereas a qualified privilege affords protection only in the absence of ill motive or malice in fact." *Id*. (citation omitted).

*1.  Absolute Immunity*

"The application of an absolute privilege is to be found in only very limited areas of activity in our society. It has been generally limited to legislative and judicial proceedings, and other acts of state, such as communications made in the discharge of a duty of the Governor or heads of the executive departments of a state." *Id*.; *see Hecht v. Levin*, 613 N.E.2d 585, 587 (Ohio 1993) (The rule regarding absolute privilege is that a "statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears.") (citation omitted). However, the absolute privilege has also been recognized as applying to proceedings of a quasi-judicial nature. *See, e.g., Baldwin v. adidas Am., Inc*., No. C2-02-265, 2002 WL 2012562, at *3 (S.D. Ohio July 29, 2002) (finding the United States Patent and Trademark Office, Trademark Trial and Appeals Board a quasi-judicial tribunal and statements made in a

petition thereto are "clothed with an absolute privilege"); *Barilla v. Patella*, 760 N.E.2d 898, 906 (Ohio Ct. App. 2001) ("[c]ommunications made during unemployment proceedings, which are quasi-judicial in nature, are subject to an absolute privilege").

Initially Roe maintains that her statements should be cloaked in absolute immunity because the disciplinary proceedings at Wooster are quasi-judicial. The Ohio Supreme Court has never extended absolute immunity to college disciplinary proceedings. Roe notes, however, that at least one Ohio appellate court has, citing *Savoy v. Univ. of Akron*, 15 N.E.3d 430 (Ohio Ct. App. 2014). In *Savoy*, a student claimed that the university defamed him when it made false statements regarding his arrest for trespass upon the school's premises. Specifically, the student alleged that university officials made false statement to the police in order to initiate student disciplinary proceedings against him. The court found the statements privileged, noting that "[a]bsolute privilege applies to shield individuals from civil liability for statements made to prosecutors or police reporting possible criminal activity." *Id*. at 435 (citations omitted). Significant to the present dispute, the court went on to also find that "[t]he absolute privilege applicable to statements made in a judicial or quasi-judicial proceeding also applies to the testimony provided by the officials during appellant's disciplinary hearing." *Id*. (citations omitted).

The court in *Savoy* offered little analysis for its alternative ruling that the defendant's statements during a school's disciplinary proceeding were entitled to the highest level of immunity. In a footnote, however, the court noted that "[b]ecause the university's student code and conduct sections requires notice, a hearing, and provides the student with an opportunity to present evidence, the disciplinary proceeding in this case was a quasi-judicial proceeding." *Id*. at

11

435 n.3 (citing *Gaines v. Columbus Civ. Serv. Comm.*, 913 N.E.2d 1039 (Ohio Ct. App. 2009)). Because plaintiff was afforded these protections, Roe argues that the Court should find Wooster's proceedings to be quasi-judicial. (Roe MTD Reply at 1116; *see* Doc. No. 28 at 1015-21, citing various provisions contained in Wooster's Student Handbook.)

Plaintiff disagrees, arguing that, even if *Savoy* might find application in the context of a public university's disciplinary proceedings, "[n]othing in Ohio law suggests that a private school disciplinary hearing is a quasi-judicial hearing."[6] (Roe MTD Opp'n at 1083.) There is support outside Ohio for plaintiff's position, as some courts have been reluctant to offer absolute immunity for statements made during a private university's disciplinary proceedings, emphasizing the lack of government involvement. *See, e.g., Cuba v. Pylant*, 814 F.3d 701, 716-17 (5th Cir. 2016) (refusing to apply absolute immunity to statements offered in a student's disciplinary proceeding, noting the complete absence of any state law providing for such immunity for "a statement in a 'quasi-judicial' proceeding *in a private institution that does not have any law enforcement or law interpreting authority*") (emphasis in original) (footnote with case citations omitted); *Overall v. Univ. of Pa.*, 412 F.3d 492, 497-98 (3d Cir. 2005) (finding that, under Pennsylvania law, a disciplinary proceeding of a private university was not quasi-judicial because there was no government involvement).

The existence of a governmental presence is a common thread running through the Ohio cases, as well. For example, in *Hecht*, a case heavily relied on by Roe, the Ohio Supreme Court attached absolute immunity to statements made in a grievance complaint lodged with a local bar association. The court began its analysis by underscoring the fact that the Ohio Constitution

---

[6] It is not disputed that Wooster, unlike the University of Akron, is a private university.

entrusts to it "original jurisdiction in the discipline of attorneys in Ohio." *Hecht*, 613 N.E.2d at 588 (citing Ohio Const. art. IV, § 2(B)(1)(g)). It was based on this grant of judicial oversight that made all matters relating to the discipline and reinstatement of members of the legal profession "inherently judicial[.]" *Id.* (quotation marks and citation omitted). Because a grievance complaint was the mechanism by which such inherently judicial proceedings were initiated, the court found that all statements made therein were entitled to absolute immunity.[7] *Id.* (grievance complaint "initiates the purely judicial disciplinary procedure created by this court pursuant to Article IV of the Ohio Constitution") 613 N.E.2d at 588. *Cf. DeSilva v. State Med. Bd. of Ohio*, No. 1:09CV683, 2010 WL 1644209, at *6 n.1 (S.D. Ohio Apr. 23, 2010) (distinguishing *Hecht*, and noting that "the discipline of physicians is not under the jurisdiction of the Ohio Supreme Court, and therefore disciplinary proceedings are not 'inherently judicial in nature'") (quoting *Hecht*, 613 N.E.2d at 588); *see O'Neill v. St. Luke's Med. Ctr.*, No. 70372, 1996 WL 684343, at *5 (Ohio Ct. App. Nov. 27, 1996) (comments during peer review committee cloaked in absolute immunity pursuant to Ohio Rev. Code § 2305.25).

According to Roe, absolute immunity is also available because she believes that state-law

---

[7] As touched upon previously, there was a similar underlying element of government involvement in *Savoy*, a case involving a public university. The court in *Savoy* cited *Gaines* to support its view that college disciplinary proceedings were quasi-judicial. *Gaines* involved an administrative decision by a governmental agency, and it, in turn, relied on the Ohio Supreme Court's decision in *M.J. Kelley Co. v. City of Cleveland*, 290 N.E.2d 562 (Ohio 1972), another case involving a decision of a state administrative agency. In *M.J. Kelly*, the Ohio Supreme Court relied on the judicial review afforded to the decisions of certain administrative agencies under Ohio Const. art. IV, § 4(B) to find that judicial review under this constitutional provision would not be available without notice, a hearing, and the opportunity to introduce evidence. *Id.* at syllabus, ¶ 2. Like the decision in *Hecht*, it was the opportunity for judicial review afforded by the Ohio Constitution that rendered the proceedings quasi-judicial, something that is absent from the present case.

defamation claims are pre-empted by Title IX. (Roe MTD Reply at 1120, citing *Stiles v. Chrysler Motors Corp.*, 624 N.E.2d 238, 242 (Ohio Ct. App. 1993)). In *Stiles*, an Ohio appellate court determined that an absolute privilege attached to defamatory statements made in grievance proceedings, labor bargaining sessions, and termination notices. *Id*. The court explained that "[b]ecause of the overriding federal interests in labor relations, federal law preempts state defamation law to the extent that an absolute privilege exists to make an alleged defamatory statement if the statement is made by representatives of management or the Union during a conference and bargaining session having for its purpose the adjustment of a grievance of the employee or other disposition of such grievance." *Id*. (quotation marks and citations omitted). While the court in *Stiles* also suggested that labor grievance proceedings were quasi-judicial in nature, it held that the "determining factor [was] whether the alleged defamatory statement was made during or in connection with dispute resolution processes governed by a collective bargaining agreement."[8] *Id*.

*Stiles* is inapplicable to the present case. In *Stiles*, the court based its finding of absolute immunity on the limited availability of complete preemption of state law by the National Labor Relations Act. Yet, "the Supreme Court has demonstrated a reluctance to extend application of the 'complete preemption' doctrine, largely limiting its finding of complete preemption to a

---

[8] The court cited only the Restatement for its alternative finding that labor grievance proceedings were quasi-judicial. *Id*. at 242. Yet, the Restatement provision in question accords an absolute privilege for proceedings of "[c]ertain *governmental agencies* whose functions are sometimes empowered to exercise a wide discretion in the application of legal principles to varying fact situations . . . ." Restatement of the Law Second Torts § 585, cmt. b (1977) (emphasis added). At least one Ohio court has questioned the ruling in *Stiles*, underscoring the lack of government involvement in private labor grievance proceedings. *See, e.g., Gintert v. WCI Steel, Inc*., No. 2002-T-0124, 2007 WL 4376178, at *4 (Ohio Ct. App. Dec. 14, 2007) (disagreeing with *Stiles*, and noting that "[t]he types of activity to which [absolute] privilege has been extended, such as bar grievance proceedings and unemployment proceedings, are at least *acts of state*") (emphasis added).

handful of federal statutes, the most widely recognized of these being the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA") and the Employee Retirement Income Security Act, 29 U.S.C. § 1144(a) ("ERISA")." *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 553 (6th Cir. 2005) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987); *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S. Ct. 1235, 20 L. Ed. 2d 126 (1968)). Neither the United States Supreme Court, nor the Sixth Circuit, has extended this limited doctrine to Title IX claims and proceedings under that title, and the Court sees no reason to take this extraordinary step.

Therefore, in the absence of governmental involvement, given the Ohio Supreme Court's reluctance to extend the doctrine of absolute immunity beyond certain limited areas, and without an indication of further expansion of the doctrine's application in Ohio, the Court finds it unlikely that the Ohio Supreme Court would afford absolute immunity to statements made during a private university's student disciplinary proceedings. *See generally Constanzo*, 403 N.E.2d at 982. Roe is not entitled to dismissal on the basis of this doctrine.

2. *Qualified Immunity*

Roe's statements made to Wooster's Title IX investigator, and in her sexual assault complaint, may be subject to a qualified privilege. "A qualified privilege is recognized when a commonality of interest exists between the publisher and recipient of the communication and the communication is of a kind reasonably calculated to protect or further that interest." *Daubenmire*, 805 N.E.2d at 592 (citing, among authority, *Hahn v. Kotten*, 331 N.E.2d 731 (Ohio 1975)); *see Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 460 (6th Cir. 2004) (citing

*Hahn, supra*). Here, the statements to school officials were likely made in reference to a shared interest between Roe and school officials regarding a potential violation to the school's ethical code, and such statements would be reasonably calculated to protect or further that interest. *See Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758-9 (D. Md. 2015) (recognizing that defamatory statements made regarding an alleged assault on college campus would enjoy a conditional privilege, under Maryland law, because they would have been made in furtherance of a legitimate interest in ensuring the alleged victim's personal safety on campus).

That said, "a qualified privilege is exceeded when the statements are made with actual malice." *Daubenmire*, 805 N.E.2d at 593 (citing *Hahn, supra*). Plaintiff bears the burden to demonstrate by clear and convincing evidence that the statements were made with actual malice. *Id*. (citing *Jacobs v. Frank*, 573 N.E.2d 609, syllabus ¶ 2 (Ohio 1991)). In the instant case, the Court cannot find from the face of the pleadings that Roe's statements are privileged. Plaintiff alleges that Roe made false accusations against him that he sexually assaulted her for the purpose of obtaining certain accommodations from Wooster. (FAC ¶¶ 33(f), 92, 99.) The establishment of such facts by clear and convincing evidence would demonstrate actual malice sufficient to defeat a qualified privilege. *See, e.g., Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 213-14 (W.D.N.Y. 2013) (finding complaint allegations that defendant female student raised false accusations of sexual assault in retaliation for plaintiff ending their relationship defeated a Rule 12(b)(6) motion to dismiss a defamation claim under New York law). Accordingly, Roe's motion to dismiss the defamation claim asserted against her based on qualified privilege is also denied.

## C. Intentional Infliction of Emotional Distress Claim is Derivative

Count VI of the FAC seeks to recover for emotional distress caused by Roe's alleged defamatory statements. (*See* FAC ¶¶ 98-9 [Roe "intended to cause John Doe serious emotional distress through making false allegations against him[,]" and her conduct "was extreme and outrageous because she made false allegations against John Doe, on information and belief, in order to obtain accommodations from [Wooster]."].) As such, this claim "is properly characterized as a 'disguised defamation' claim[,]" and is subject to the same statute of limitations and immunity arguments as the defamation claim. *See Breno v. City of Mentor*, No. 81861, 2003 WL 21757504, at *3 (Ohio Ct. App. July 31, 2003), *abrogated on other grounds by Foley v. Univ. of Dayton*, 81 N.E.2d 398 (Ohio 2016).

Because the same facts that form the basis for plaintiff's defamation claim against Roe also serve as the foundation for the remaining emotional distress claim, the Court finds it unnecessary to consider Roe's other challenges to Count VI at this time as discovery will proceed the same regardless of which particular theories of liability are in play. Roe shall have leave to renew her remaining arguments on summary judgment when the Court may consider them against the backdrop of a fully developed record.

## IV. Conclusion

For all of the foregoing reasons, defendant Roe's motion to dismiss Counts V and VI of the FAC is denied, and the arguments raised in motion practice relating to timeliness and qualified immunity may be reasserted on summary judgment.

**IT IS SO ORDERED**.

Dated: February 13, 2018

 **HONORABLE SARA LIOI**
 **UNITED STATES DISTRICT JUDGE**